# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**SETANTA SPORTS NORTH AMERICA LIMITED,**

        Plaintiff,

-vs-                                  Case No. 6:09-cv-818-Orl-28GJK

**PAUL S. PICKFORD and FAWLTY TOWERS TAVERN, INC.,**
        Defendants.

_____

## AMENDED REPORT AND RECOMMENDATION[1]

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion:

> **MOTION:**    PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (Doc. No. 24)
>
> **FILED:**     January 25, 2010
> _____
>
> **THEREON** it is **RECOMMENDED** that the **MOTION** be **GRANTED.**

## I. BACKGROUND.

On May 14, 2009, Setanta (the "Plaintiff") filed a five count complaint (the "Complaint") for violations the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 553, and the Federal Communications Act of 1934, 47 U.S.C. § 605, against Paul S. Pickford ("Pickford"),

---

[1] The report and recommendation is amended to reflect the undersigned's recommendation regarding the quantification of damages.

1

individually, and as officer, director, shareholder, and/or principal of Fawlty Towers Tavern, and Fawlty Towers Tavern, Inc. ("Fawlty") (collectively, the "Defendants"). Doc. No. 1. The Complaint asserts the following claims against the Defendants: Count I – violation of 47 U.S.C. § 605(a); Count II – violation of 47 U.S.C. § 605(e)(4); Count III – violation of 47 U.S.C. § 553; Count IV – violation of 18 U.S.C. § 2511; and Count V – conversion. Doc. No. 1. Plaintiff operates the "only dedicated European Sports and rugby channel in North America," which is available on a monthly subscription basis. Doc. No. 24-4 at 1 ¶ 3. Plaintiff possessed the exclusive right, by contract, to distribute the February 11, 2009, England/Spain soccer match. Doc. Nos. 1 at ¶ 9; 24-4 at 2 ¶ 4. Plaintiff entered into contracts with certain business entities in the state of Florida granting them a license to broadcast the February 11, 2009, England/Spain soccer match. Doc. No. 1 at 3 ¶ 10. Plaintiff also entered into a contract with Signal Auditing Inc. to identify other establishments who broadcast the February 11, 2009, England/Spain soccer match without a license. Doc. Nos. 1 at 3 ¶ 11; 24-4 at 2 ¶ 6. In the Complaint, Plaintiff alleges that the Defendants, without a license, illegally broadcasted a February 11, 2009, soccer match in their establishment. *See* Doc. No. 1 at 4-7.

On June 3, 2009, Pickford was properly served by substitute service with a copy of the summons and Complaint. Doc. No. 10. On July 9, 2009, default was entered against Pickford Doc. No. 14. On November 11, 2009, Fawlty was properly served with a copy of the summons and the Complaint. Doc. No. 21.[2] On January 5, 2010, default was entered against Fawlty. Doc. No. 23.

On January 25, 2010, Plaintiff filed a Motion for Default Judgment (the "Motion"). Doc.

---

[2] On June 3, 2009, service was attempted on Fawlty and default was entered by the Clerk of the Court. Doc. Nos. 11, 15. On September 30, 2009, the Court entered an order vacating the entry of default as to Fawlty because the service was ineffective. Doc. No. 17.

2

No. 24. In the Motion, Plaintiff seeks default judgment against the Defendants only as to Count I. Doc. No. 24-1 at 14. Attached to the Motion is an affidavit of Gina Middleton, which states that on February 11, 2009, at 4:05 p.m., she observed eight televisions in the Defendants' establishment broadcasting the England/Spain soccer match. Doc. No. 24-4 at 9-10. Ms. Middleton states that there were approximately twenty-three (23) people in the bar, which had a capacity of approximately one-hundred-ten (110) people. Doc. No. 24-4 at 9-10. Plaintiff requests the followings relief jointly and severally as to Defendants:

> 1) Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), a sum in the discretion of the Court, of up to the maximum amount of TEN THOUSAND DOLLARS ($10,000.00) as to each Defendant; and
>
> 2) Pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), a sum in the discretion of the Court, of up to the maximum amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for each Defendant's willful violation of 47 U.S.C. § 605(a); and
>
> 3) Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), in the discretion of the Court, costs and attorney's fees of EIGHT HUNDRED NINETY SIX DOLLARS AND TWENTY FIVE CENTS ($896.23).

Doc. Nos. 24-1 at 14; 24-2 at 3-4.[3]

## II. THE LAW.

### A. Default Judgment.

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the civil rules, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default. Fed.R.Civ.P. 55 (a). Rule 55 (b)(2) further provides:

> In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or

---

[3] Counsel for Plaintiff sent a copy of the Motion to the Defendants by regular mail. Doc. No. 24 at 2-3.

> an incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial– when, to enter or effectuate judgment , it needs to:
>    A) conduct an accounting;
>    B) determine the amount of damages;
>    C) establish the truth of any allegation by evidence; or
>    D) investigate any other matter.

*Id*. The mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court. Rather, the Court must find that there is a sufficient basis in the pleadings for the judgment to be entered. *Nishimatsu Constr. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[4]

A default judgment cannot stand on a complaint that fails to state a claim. *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) (citing *Nishimatsu*, 515 F.2d at 1206). A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact, and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (citing *Nishimatsu*, 515 F.2d at 1206).

**B.** **47 U.S.C. § 605.**

In the Motion, although Plaintiff argues that it should be entitled to relief under both 47 U.S.C. § 553 and § 605, Plaintiff only requests relief pursuant to the Federal Communications Act of 1934, 47 U.S.C. § 605. Doc. Nos. 24 at 1-2; 24-1 at 7, 14.[5] Plaintiff requests the statutory

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit that were rendered prior to October 1, 1981.

4

damages provided in 47 U.S.C. § 605(e)(3)(C). Doc. Nos. 24 at 2; 24-1 at 14.

The pertinent portions of the Federal Communications Act of 1934 provide:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or of the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). The Federal Communications Act of 1934, as amended, applies to the interception of satellite cable signals because satellite cable signals are "radio communications." *United State v. Howard*, 13 F.3d 1500, 1501 (11th Cir. 1994) (affirming convictions under § 605 for unauthorized interception of encrypted satellite signals). Section 605(e)(3)(A) provides a private cause of action for the unauthorized reception, interception, and use of radio communication. *Id*. Section 605(e)(3)(B)(iii) requires the Court to award "the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails" under Section 605(a). 47 U.S.C. § 605(e)(3)(B)(iii).

## III. APPLICATION.

Attached to the Motion, is the affidavit of Shane O'Rourke, Plaintiff's President of North

---

[5] The Cable Communications Policy Act of 1984, 47 U.S.C. § 553, attempts to address the problem of cable theft that arose in 1980's through the use of devices which disable or unscramble the security features of cable signals. *Id*.; *see also Scientific-Atlanta Inc., v. Fenley*, 1997 WL 33543688 at *9-10 (N.D. Ga. Jan. 14, 1997). The penalties and damages available under § 605 are far greater than those available under § 553. Moreover, attorneys' fees and costs are mandatory under § 605, but only discretionary under § 553.

5

American Operations, which states that Plaintiff transmitted the February 11, 2009, England/Spain soccer match to subscribers "via closed circuit television and via encrypted satellite signal." Doc. No. 24-4 at ¶ 3. The affidavit further states that "[t]he event originated via satellite uplink and was subsequently re-transmitted by [Plaintiff] to its commercial customers via satellite signal." *Id*. Mr. O'Rourke's affidavit states that the Defendants were not authorized to receive or exhibit the February 11, 2009 match, and Ms. Middleton's affidavit states that the Defendants did receive and exhibit the match on February 11, 2009. Doc. No. 24-4 at 2, 9-10.

In *Howard*, 13 F.3d at 1501, the Eleventh Circuit affirmed the defendant's conviction under § 605 because he was modifying electronic devices in a way that permitted users to unscramble encrypted satellite transmissions of subscription satellite television programming. *Id*. In this case, although the Plaintiff does not know the method used by the Defendants to unscramble the encrypted satellite transmission, Plaintiff has demonstrated through the affidavits of Mr. O'Rourke and Ms. Middleton that the Defendants intercepted or received an unauthorized radio communication and willfully used that communication for Defendants' own benefit.

## IV. DAMAGES AND COSTS.

A plaintiff may elect to pursue actual or statutory damages and Plaintiff moves this court to award the maximum statutory damages, under 47 U.S.C. § 605(e)(3)(C)(i)(II) and (ii), in the amount of $110,000.00, plus $896.25 in attorney's fees and costs. 47 U.S.C. § 605(e)(3)(C)(i)(II) and (C)(ii); Doc. No. 24-1 at 14.

### A. Damages under 47 U.S.C. § 605(e)(3)(C)(i)(II).

Under 47 U.S.C. § 605(e)(3)(C)(i)(II), Plaintiff seeks up to the maximum amount of $10,000.00 in statutory damages. Doc. No. 24-1 at 14. Section 605(e)(3)(C)(i)(II) provides: "the aggrieved party may recover an award of statutory damages for each violation of subsection (a)

of this section involved in the action in a sum of not less than $1,000 or more than $10,000 as the court considers just….." 47 U.S.C. § 605(e)(3)(C)(i)(II). "The Eleventh Circuit has not addressed a uniform formula for calculating damages under section 605." *Joe Hand Promotions v. McBroom*, 2009 WL 5031580 at *4 (M.D. Ga. Dec. 15, 2009). "Some courts will award damages as a flat sum," while other courts will "award the plaintiff the license fee the defendant, based on its maximum capacity, would have paid if it had legally purchased the event for exhibition." *Id*. (citing *J&J Sports Productions v. Arboleda*, Case No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859 at *6 (M.D. Fla. Oct. 27, 2009)). Still other courts will, "[w]hen the exact number of patrons is known…base the award on the number of patrons in the establishment who viewed the unauthorized showing multiplied by a number set by the court." *J&J Sports Productions v. Ribeiro*, 562 F. Supp. 2d 498, 501-02 (S.D.N.Y. 2008). "This number varies widely from $20[.00] to $300[.00] [per patron], although most courts set a number around $50[.00]." *Id.* at 502.

On February 11, 2009, according to the affidavit of Ms. Middleton, there were 23 patrons watching the soccer match in Defendants' establishment. Doc. No. 24-4 at 10. Because the Plaintiff has not provided the court with the licensing fee that would have been charged if Defendants had purchased a license from Plaintiff to exhibit the soccer match, and because the number of patrons who viewed the soccer match is known, the undersigned finds the approach taken in *Ribeiro* persuasive. Multiplying the number of patrons (23) by $50.00 per patron results in $1,150.00 in statutory damages. The Motion specifically requests a default judgment "jointly and severally" against Defendants, therefore the amount of statutory damages recommended to be awarded jointly and severally under § 605(e)(3)(C)(i)(II) is $1,150.00. Doc. No. 24 at 1-2.

## B. Damages under 47 U.S.C. § 605(e)(3)(C)(ii).

Under 47 U.S.C. § 605(e)(3)(C)(ii), Plaintiff also seeks up to the maximum statutory enhanced damages in the amount of $100,000.00. Doc. No. 24-1 at 14. Section 605(e)(3)(C)(ii) provides:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii). Further, § 605(e)(2) provides: "[a]ny person who violates subsection (a) of this section willfully and for purposes of direct or indirect commercial advantage or private financial gain shall be fined not more than $50,000…for the first such conviction…." 47 U.S.C. § 605(e)(2). In determining the amount of enhanced damages to award under § 605(e)(3)(C)(ii) "[t]he Court must strike a balance between deterring other incidents of piracy by these Defendants and others, and not making the award such that it will put a small business out of business." *Arboleda*, No: 6:09-cv-467-Orl-18DAB at *7. For first time violators of § 605(a), many courts, under similar fact patterns, have multiplied the amount of statutory damages awarded under § 605(e)(3)(C)(i)(II) by three (3) to compute the amount of enhanced damages. *See Kingvision Pay-Per-View Corp., Ltd. V. Wright*, Case No. 8:06-cv-892-T-30MAP, 2006 WL 4756450 at *3 n.8 (M.D. Fla. Oct. 27, 2006) (awarding enhanced damages in the amount three times the actual damages for first known violation of § 605(a) ($2,075.00 x 3)); *McBroom*, 2009 WL 5031580 at *6 ("award[ing] enhanced damages amounting to three times the statutory damages of $1,100[.00], which equals $3,300[.00]"); *Ribeiro*, 562 F. Supp. 2d at 502 ("the Court will award three times the statutory damages for enhanced damages of

$4,500[.00]" ($1,500 x 3)). Because the undersigned finds that the Defendants intercepted or received an unauthorized communication and willfully used the communication for Defendants' own commercial benefit, and because this is Defendants' first known violation of § 605(a), the undersigned recommends awarding enhanced damages three times the amount of recommended statutory damages ($1,150.00 x 3) for total recommended enhanced damages, jointly and severally, of $3,450.00.

### C. **Attorney's Fees and Costs.**

As provided in § 605(e)(B)(iii), the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(B)(iii). Counsel for Plaintiff attaches a detailed time sheet and affidavit to the Motion showing that he expended 4.75 hours of time on the case at an hourly rate of $200.00 per hour, and that a paralegal expended 2.30 hours of work on the case at $75.00 per hour for a total of $1,122.50 in attorneys' fees. Doc. No. 24-2 at 1-3. Counsel also attaches to his affidavit documentation reflecting filing fees in the amount of $350.00 and service of process fees in the amount of $320.00, for a total of $670.00 in costs. *Id*. Therefore, counsel's affidavit reflects a total of $1,792.50 in attorneys' fees and costs. *Id*. However, in the Motion and counsel's affidavit, Plaintiff requests attorneys' fees and costs in the amount of $896.25. Doc. Nos. 24 at 1-2; 24-2 at 3-4. The Motion and counsel's affidavit specifically request a default judgment "jointly and severally" against the Defendants. *Id*. Based on the forgoing, the undersigned recommends that the Court find Plaintiff's request for an award of attorneys' fees and costs in the amount of $896.25, jointly and severally, is reasonable.

Accordingly, after reviewing the Complaint and Motion filed in this action, as well as the affidavits submitted with the Motion, the undersigned recommends that the Court find that a

9

final default judgment should be entered in favor of Plaintiff and against Defendants as to Count I and award Plaintiff damages against Defendants in the amounts as outlined above.

Accordingly, it is **RECOMMENDED** that the Court:

1) **GRANT** the Motion (Doc. No. 24);

2) Direct the Clerk to enter a default judgment against the Defendants, jointly and severally, in the following amounts:

> A) Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), a sum in the amount of ONE THOUSAND ONE HUNDRED FIFTY DOLLARS AND ZERO CENTS($1,150.00);[6] and
>
> B) Pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), a sum in the amount of THREE THOUSAND FOUR HUNDRED FIFTY DOLLARS AND ZERO CENTS ($3,450.00) for enhanced damages for each Defendant's willful violation of 47 U.S.C. § 605(a);[7] and
>
> C) Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), in the discretion of the Court, costs and attorney's fees of EIGHT HUNDRED NINETY SIX DOLLARS AND TWENTY FIVE CENTS ($896.23); and

3) Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. If Plaintiff has no objection to this report and recommendation, Plaintiff may promptly file a notice of no objection with the Court.

**Recommended** in Orlando, Florida on May 21, 2010.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

---

[6] 23 patrons x $50.00 per patron.
[7] $1,150.00 x 3.

Copies furnished to:
**Presiding District Court Judge**
Counsel of Record
Unrepresented Party